DECISION
Plaintiff appeals the value of his home, identified as Account 240331, for tax year 2008-09. Jurisdiction is provided in ORS 305.275[1] and ORS 305.280.
Trial was held August 25, 2009. Plaintiff, who has 30-plus years of experience in commercial and residential construction, and who owns property in several states, appeared and testified on his own behalf. (Ptf's Ex 1 at 6.) Also testifying for Plaintiff was Dawn O'Leary (O'Leary), an independent fee appraiser with a Senior Residential Appraiser designation. Defendant was represented by Denise Vandecoevering (Vandecoevering), a registered appraiser who has worked for the Defendant's office for nine years, the last five years as a residential appraiser valuing properties in the area of the subject property. Prior to her employment with Defendant, Vandecoevering was a real estate agent in Tillamook County.
 I. STATEMENT OF FACTS
The subject property is a two story structure, with a street level main entry and a finished lower level. (Ptf's Ex 7 at 3.) The home is located in Pacific City, a small coastal town, with an unobstructed ocean view from the back of the house, visible through the many windows on both levels of the ocean side of the home, and the nearly 80 linear feet of exterior decking on the back *Page 2 
of the home. (Ptf's Ex 7.) The home was approximately 52 percent complete (Def s Ex A at 4) on the applicable assessment date of January 1, 2008.See generally ORS 308.007 (defining assessment year, assessment date, and tax year). Plaintiff purchased the 0.16 acre lot on which the home sits on in June 2007 for $349,000. (Def s Ex A at 1; Ptf's Ex 7 at 4.) Plaintiff reports actual costs of $221,150 for the home as of January 1, 2008.
The main level of the home is approximately 1,750 square feet (Ptf's Ex 7 at 3), with roughly another 1,910 square feet of finished below grade living area commonly known as a daylight basement, plus 304 square feet of unfinished basement, and a 470 square foot attached garage. (Def s Ex A at 4.) There are three bedrooms in all, one (the master bedroom) on the main level, and two other bedrooms downstairs, two and one-half baths, vaulted ceilings, and a home stereo system. (Id.) Plaintiffs appraiser O'Leary describes the home in her appraisal report, in part, as follows:
 "The interior features include ceramic tile flooring and carpet, the great room features a stone faced gas fireplace, a master suite, formal dining area and den on the main level. The lower level has two-bedrooms with a hal[f] bath, a large bonus/family room area, large music room, rec room with wet bar and finished storage room. The home has a sloping site with views of the ocean and Haystack Rock to the west."
(Ptf's Ex 7 at lO.)
The subject property's Real Market Value (RMV) on the 2008 assessment and tax rolls is $531,890, with $249,680 allocated to the land and $282,210 to the structures at 52 percent complete. (Ptf's Ex 1 at 22.) All of the "structures" RMV is exception value.[2] (Id.) There is an additional $12,500 of exception RMV attributable to the land for site development costs (water, *Page 3 
sewer, electric, grading, concrete, etc.). (Id.) The total exception RMV is $294,710. (Id.) The property's assessed value (AV) is $238,100, which is approximately 45 percent of the property's total RMV. (Id.) Plaintiff appealed those values to the county board of property tax appeals (board), and the board sustained the values. (Compl at 2.)
In his appeal to the Tax Court, Plaintiff contends that the total RMV of the home (including the land) at 100 percent complete is $555,000, and that the value of the home at 52 percent complete is $158,600 (plus $250,000 land RMV). (Ptf's Ltr at 1, July 16, 2009.) At trial, however, Plaintiff requested an RMV for the partially completed home of $121,800. Plaintiff reports actual costs for the home as of January 1, 2008, of $221,150, roughly $100,000 more than the value requested at trial. The parties agree that the RMV of the land is $250,000. Defendant requests that the court sustain the values on the rolls. (Answer.)
 II. ANALYSIS
The parties agree on the value of the subject property's land, including site developments, at $250,000. The parties also agree that Plaintiffs home was 52 percent complete on January 1, 2008, which is the applicable assessment date for the 2008-09 tax year.[3] The only issue, therefore, is the value of Plaintiff s partially completed home.
A. Overview of Applicable Laws
RMV for property tax purposes is defined by statute as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax *Page 4 
year." ORS 308.205(1). The administrative rule promulgated by the Oregon Department of Revenue instructs that the three approaches to value-sales comparison, cost, and income-be considered in determining a property's value, but recognizes that all three approaches may not be applicable in a given case. OAR 150-308.205-(A)(2)(a).[4] Because the subject property is owner occupied and does not generate any income, neither party used the income approach in valuing Plaintiff's property.
Of the two remaining approaches, the cost approach has a notable appeal. This court has previously ruled that the cost approach is well suited for new homes. Magno v. Dept. of Rev. (Magno), 19 OTR 51, 55
(2006) (quoting Appraisal Institute, The Appraisal of Real Estate 63 (12th ed 2001), for the accepted rule in appraisal that "[t]he cost approach is `particularly useful in valuing new or nearly new improvements'"). The Appraisal Institute's treatise explains that "`[i]n the cost approach, the value of a property is derived by adding the estimated value of the land to the current cost of constructing a reproduction or replacement for the improvements and then subtracting the amount of depreciation * * * in the structures from all causes." Magno,19 OTR at 55. Under the cost approach, actual costs are relevant and often persuasive, but not controlling. That is because the task is to determine market value and, although different contractors may build the same home for differing amounts, the completed home may sell for the same amount of money regardless of how much it cost to build.
Plaintiff has the burden of proof and must establish his case by a "preponderance" of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of *Page 5 
evidence, the more convincing evidence." Feves v. Dept. of Rev., 4 OTR 302,312 (1971); see also Riley Hill General Contractor v. Tandy Corp.,303 Or 390, 394, 737 P2d 595 (1987) (" `Preponderance' derives from the Latin word `praeponderare,' which translates to `outweigh, be of greater weight'"). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." Reed v.Dept. of Rev., 310 Or 260, 265, 798 P2d 235 (1990).
B. Plaintiff's Evidence
1. Plaintiff's Appraisals
Plaintiff submitted three appraisal reports, although one is a review of one of the other appraisals. (Ptf's Exs 5, 6 and 7.) The first appraisal is by Robyn Krohn (Krohn) and was made for Bank of America for refinancing purposes after the home was completed. (Ptf's Ex 5 at 3.) That report evaluates three sales and three listings and arrives at a value for the subject property, under the sales comparison approach, of $535,000 for the completed home and land. (Ptf's Ex 5 at 3, 5.) Krohn came up with a nearly identical value under her cost approach, valuing the land at $150,000 plus $10,000 for "as is" site improvements, and the completed improvement (i.e., the home) at approximately $376,000. (Ptf's Ex 5 at 6.) However, Krohn's value estimate is as of May 26, 2009, which is approximately 17 months after the January 1, 2008, assessment date. Backtrending that $535,000 value using O'Leary's more conservative one percent per month decline in the market (discussed below)[5] suggests a value of $634,681[6] as of January 1, 2008. The indicated value of thehome, after subtracting Krohn's $160,000 land value (including site developments), is $474,681, or $246,834 at 52 percent complete. However, the court has *Page 6 
insufficient evidence to know whether that decline extends back to January 2008, or whether the rate was consistent over that time period. Krohn reports that "[t]here has been a 4% decrease in the market" in 2009 that suggests one percent per month from January through April 2009. (Ptf's Ex 5 at 11.)
Plaintiffs second appraisal, submitted as Exhibit 6, is a supervisory review appraisal of Krohn's Bank of America appraisal, submitted as Exhibit 5 and discussed immediately above. The supervisory appraisal was performed by Mickey McCune (McCune) and provides a "recommended value" of $535,000 as of the date of the review, June 10, 2009. (Ptf's Ex 6 at 2.) Plaintiff and O'Leary both testified that McCune's appraisal was intended to bolster the accuracy of Krohn's appraisal. That report is only five pages long and provides a limited explanation of the appraiser's assumptions or basis for conclusion. More importantly, at most, McCune's report simply supports a $535,000 value for the subject property 17 months after the assessment date, based on sales well after the assessment date, and is therefore of limited value. The court's other comments about Krohn's appraisal apply with equal force to McCune's review.
Plaintiffs third appraisal is O'Leary's report, estimating the value of Plaintiff s property at $575,000 as of July 8, 2009. (Ptf's Ex 7 at 4.) As stated earlier, O'Leary appeared at trial and testified. O'Leary included five sales and one listing in her report. (Ptf's Ex 7 at 4, 9.) O'Leary's five adjusted sale prices range from a low of $386,500 (comparable #5) to a high of $606,900 (comparable #3). (Ptf's Ex 7 at 9, 4.) However, as with the two other appraisals Plaintiff proffered, O'Leary's value estimate post-dates the assessment date by a considerable time span: 18-plus months. O'Leary's value is based on one sale occurring in December 2008 and four other sales several months into 2009-all well after the January 1, 2008, assessment date. (Id.) O'Leary states in her appraisal report that "current market conditions show[] a decline in *Page 7 
value from 1-1.5% per month." (Ptf's Ex 7 at 5.) Trending O'Leary's $575,000 July 2009 estimate by her one percent per month market decline for 18 months (back to January 1, 2008) suggests a value of $689,000 (rounded). Subtracting O'Leary's $190,000 land value leaves an improvement value of $499,000 for Plaintiffs completed home, or $260,000 (rounded) at 52 percent complete. Of course, as indicated above, it is not entirely clear from the evidence whether the decline in the market dates back to the assessment date, or whether the rate of decline was consistent for the entire 18 months. O'Leary's value estimate under the cost approach is $630,775, with $190,000 allocated to the land (including $15,000 "as-is" site improvements). (Ptf's Ex 7 at 5.) The estimated cost of the completed improvements is $440,775, or $229,203 at 52 percent complete. (Id.) That value rises to $270,460[7] once adjusted for the one percent per month market decline for 18 months.
2. Plaintiff's Costs
As indicated above, Plaintiff reports actual costs for the home of $221,150 as of January 1, 2008. As indicated above, Plaintiffs value request at trial was $121,800. Plaintiff stated that he did not feel the court should rely on the cost approach because of the definition of RMV.
C. Defendant's Evidence
Defendant submitted an appraisal report marked Exhibit A that estimates the value of the subject property as of January 1, 2008, using both the Sales Comparison Approach and the Cost Approach. *Page 8 
1. Defendant's Sales Comparison Approach
Defendant valued the property at $830,000 at 100 percent complete. (Def s Ex A at 12.) Defendant valued the land at $250,000 and the home at $580,000 ($158 per square foot) for the completed structure, less $20,000 for "Accessory Improvements," for a final improvement value of $560,000. (Def s Ex A at 12.) At 52 percent complete, Defendant's estimate of the market value of the partially completed home is $291,200. (Id.) Defendant's value is based on four comparable sales, two occurring in November 2007, one in December 2007, and a fourth in December 2008, with adjusted sale prices ranging from a low of $765,800 (Comp #3) to a high of $873,700 (Comp #4). (Def s Ex A at 10-12.)
Plaintiff testified that several of Defendant's comparable sales are located a considerable distance from the subject property, in completely different market areas. Defendant's comparable sales #3 and #4 are located 10 miles and 17 miles, respectively, from the subject property. (Def s Ex A at 15, 16.) Furthermore, O'Leary testified that Defendant's comparable sale #2 (34815 Ocean Drive) is in a superior area, in that it is in a gated community with paved streets maintained by the county, has direct beach access, is located at the end of the road (and is therefore more private), and affords a nearly 360 degree view of the ocean. Plaintiffs subdivision, by contrast, has no curbs, gutters, or lighting, and the roads are not maintained by the county. Those criticisms are valid and relevant, and made a lasting impression on the court.
2. Defendant's Cost Approach
Defendant's value estimate under the cost approach is $528,519 at 52 percent complete, with $278,839 allocated to the home and $249,680 to the land. (Def s Ex A at 17-18.) Defendant's cost approach is based on the Department of Revenue's 2005 residential cost factor book, adjusted by the appropriate local cost modifier. (Def s Ex A at 17.) *Page 9 
D. The Court's Value Conclusion
Plaintiff's basic argument is that he had two appraisals done by independent fee appraisers estimating the value of his property at $575,000 as of July 8, 2009, (Ptf's Ex 7 at 4) and $535,000 as of May 26, 2009, (Ptf's Ex 5 at 3), the latter of which was reviewed and the value of $535,000 approved by a different review appraiser. (Ptf's Ex 6.) Plaintiff notes that the definition of RMV is found in ORS 308.205(1), and is basically the likely selling price of the property. Plaintiff then argues that he has the "most reliable current appraisals [;]" and that he is "willing to split the difference and come up with an average of $555,000." (Ptf's Ltr at 1, July 16, 2009.) Plaintiff concludes by stating that, at 52 percent complete, "the Tillamook AV should be approximately [$]125,812 and not [$]238,100." (Id.) Defendant's closing focused on the fact that Plaintiff's appraisals value the property midway into calendar year 2009, whereas Vandecoevering estimated the value as of January 1, 2008.
Before turning to the issue squarely before the court, which is the RMV of Plaintiff's partially completed home on January 1, 2008, the court notes that Plaintiff's calculation of AV is contrary to law. By statute, AV is the lesser of the property's RMV or MAV. ORS 308.146(2). Plaintiff simply multiplied the current AV on the rolls by 52 percent (0.52). The correct method for calculating AV in this case is to take the property's prior year MAV, increase that number by three percent, and add to that number "[t]he product of the value of the new property * * * multiplied by the ratio * * * of the average maximum assessed value over the average real market value," as provided in ORS 308.153.
Returning to the value question (RMV), the court has already outlined the concerns it has with Plaintiff's three appraisals and his reported costs. Those problems are not, however, insurmountable. Defendant has presented a comprehensive appraisal study estimating the value *Page 10 
of the subject property on the applicable assessment date. However, Defendant's appraisal is not without its own problems, also explained above. On balance, the court finds that the value of Plaintiffs partially completed home lies in between the parties' respective appraisal estimates.
 III. CONCLUSION
After carefully evaluating the evidence, the court concludes that the RMV of Plaintiff s home on January 1, 2008, at 52 percent complete, was $250,000. The exception RMV is, therefore, $262,500 (adding $12,500 for on-site developments to the court's $250,000 improvement RMV, all of which was exception value). Defendant shall recalculate the resulting exception MAV, total MAV, and AV based on the court's findings herein. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs appeal is granted in part as set forth above.
Dated this ___ day of February 2010.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on February 19,2010. The Court filed and entered this document on February 19, 2010.
[1] All references to the Oregon Revised Statutes (ORS) are to 2007.
[2] "Exception value" is a term used to identify property added to the assessment and tax rolls for the current tax year that results in an addition to both RMV and Maximum Assessed Value (MAV), and an exception
to the typical constitutional and statutory cap of three percent on annual increases to MAV. ORS 308.146(1) (providing for annual three percent MAV increases); Or Const, Art XI, § 11(1)(b) (generally capping annual MAV increases to three percent over the prior tax year); ORS308.146(3) (providing for alternate method for determining MAV for new property that has come to be known as exception value).
[3] In Oregon, the "assessment year" is a calendar year, and the "tax year" is a 12-month period beginning on July 1 each year. ORS308.007(1)(b), (c). The annual "assessment date" is January 1, per ORS308.007(1)(a) and ORS 308.210, and corresponds to the tax year beginning six months later on July 1. ORS 308.007(2). Thus, for the 2008-09 tax year, the assessment date was January 1, 2008, the tax year began on July 1, 2008, and ended 12 months later on June 30, 2009.
[4] The rule provides: "For the valuation of real property all three approaches-sales comparison approach, cost approach, and income approach-must be considered. For a particular property, it may be that all three approaches cannot be applied, however, each must be investigated for its merit in each specific appraisal." OAR 150-308.205-(A)(2)(a).
All references to the Oregon Administrative Rules (OAR) are to the current rules.
[5] (Ptf's Ex 7 at 5.)
[6] Calculated by applying 17 monthly incremental increases of one percent (1.01) to the $535,000 figure (e.g., 535,000 x 1.01 = 540,350; 540,350 x 1.01 = 545,754, etc.).
[7] The $270,460 number was computed by multiplying the $229,203 cost (at 52 percent complete) by 1.18 (i.e., a straight 18 percent increase). The value estimate is slightly higher ($274,161) using a monthly incremental rate of one percent applied eighteen times (e.g., 229,203 x 1.01= 231,495; 231,495 x 1.01 = 233,810, etc.).